IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| HENRY J. MCGILL, | ) | C/A No. 4:07-1835-JFA-TER |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| STAN BURTT, WARDEN | ) | |
| OF LIEBER CORRECTIONAL | ) | |
| INSTITUTION, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

  The petitioner, Henry J. McGill ("petitioner/McGill"), a pro se prisoner, seeks habeas relief pursuant to 28 U.S.C. 2254. This matter is before the Court on the respondent's motion for summary judgment. (Document # 21.)[1]

  The petitioner filed this petition for a writ of habeas corpus on June 28, 2007.[2] On November 7, 2007, the respondent filed a motion for summary judgment, along with supporting memorandum and exhibits. The undersigned issued an order filed November 8, 2007, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising the petitioner of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately. On November 20, 2007, the petitioner filed a response to respondent's motion for summary judgment.

---

[1]This habeas corpus case was automatically referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the District Court Judge.

[2]The undersigned notes that this is the date which the petition was stamped as received by the Lieber Correction Institution mailroom. (Pet. Ex. 2.) Houston v. Lack, 487 U.S. 266 (1988)(holding prisoner's pleading is considered filed when filed with prison authorities for forwarding to the district court).

## I.  PROCEDURAL HISTORY

There has been no significant opposition filed as to the procedural history as set out by the respondent. Therefore, the undisputed procedural history as set out in the respondent's memorandum is discussed below.

The petitioner is currently confined at the Lieber Correctional Institution.  In April 1997, he was indicted by the Georgetown County Grand Jury for kidnapping, three counts of criminal sexual conduct ("CSC") in the first degree, assault and battery with intent to kill ("ABIK"), assault and battery of a high and aggravated nature ("ABHAN"), and assault with intent to commit CSC in the first degree.  The petitioner was represented at trial level by attorney Raymond C. Fisher.  On May 6-8, 1998, the petitioner was tried by a jury with the Honorable James E. Lockemy presiding.  (App. 146.)  At the conclusion of the State's case, the trial judge granted a directed verdict on the ABHAN charge. (App. 464.).  The jury convicted the petitioner of the remaining counts.  (App. 647-48; 839.)  Judge Lockemy then sentenced the petitioner to consecutive life sentences without parole for the kidnapping, each of the three counts of CSC first degree, and the assault with intent to commit a CSC; and a consecutive ten year sentence for the ABHAN.  (App. 670-71; 833-38.)  The petitioner filed a timely notice of appeal.

Assistant Appellate Defender Tara Taggart represented the petitioner on his direct appeal. On May 31, 2001, she filed a final brief raising the following issues:

> 1.  Whether the trial judge erred in denying appellant's motion to dismiss where appellant's right to a speedy trial was violated?
>
> 2.  Whether the trial judge erred in allowing evidence of a prior bad act not the subject of a conviction?

> 3.  Whether the trial judge erred in refusing to quash a jury seated in violation of <u>Batson v. Kentucky</u>?

(App. 676.)   On April 16, 2002, the South Carolina Court of Appeals affirmed the petitioner's convictions and sentences in <u>State v. McGill</u>, Op. No. 2002-UP 281 (S.C. Ct. App. 2002).  (App. 711.) The petitioner's petition  for a rehearing was denied on June 18, 2002. (App. 721; 727.)  The petitioner then filed a petition for a writ of certiorari with the South Carolina Supreme Court raising the following issue:

> 1.Whether the Court of Appeals erred in ruling petitioner's right to a speedy trial has not been violated.
>
> 2. Whether the Court of Appeals erred in upholding the admission of evidence of a prior bad act not the subject of a conviction.
>
> 3. Whether the Court of Appeals erred in affirming the trial judge's refusal to quash a jury seated in violation of <u>Batson v. Kentucky</u>.

(App. 728.) The South Carolina Supreme Court denied the petition on November 21, 2002.  (App. 750.)  The remittitur was sent down on November 25, 2002.  The petitioner then filed a petition for a writ of certiorari with the United States Supreme Court on February 19, 2003.  (App. 753.)  On April 7, 2003, the United States Supreme Court denied the petition.   (App. 765.)

On June 6, 2003, the petitioner filed an application for post-conviction relief ("PCR") raising the following grounds for relief:

> 1.  Ineffective Assistance of Counsel;
>
> 2. Counsel failed to investigate;
>
> 3. Counsel failed to comply with the 6th and 14th Amendment.

(App. 766.)  On March 11, 2005, through appointed counsel Wesley Locklair, the petitioner filed an amended application for PCR raising the following grounds for relief:

1. Applicant contends that he was denied effective assistance of counsel in that his attorney failed to object to the prosecutor knowingly presenting false information and false evidence to the judge and jury. The failure of Applicant's attorney to object denied him his right to effective assistance of counsel under the Constitution.

2. Applicant contends that he was denied effective assistance of counsel in that his attorney failed to object to the admission of the DNA evidence that was tampered with and failed to show the jury that such evidence was tampered with. The DNA evidence in this case went against the Applicant, and the admission of such evidence obviously had a prejudicial effect on the outcome of Applicant's trial.

(App. 776.) On March 21, 2005, an evidentiary hearing was held before the Honorable John L. Breeden, Jr. (App. 785.) The petitioner was present and represented by counsel. Judge Breeden orally denied relief at the hearing, and on April 14, 2005, filed a written order dismissing the petitioner's claims and denying him PCR. (App. 827.) The petitioner appealed. On January 30, 2006, counsel filed a petition to be relieved as counsel and a "no merit" Johnson petition raising the following issue:

Whether counsel was ineffective for failing to investigate petitioner's alibi witness and for failing to argue to the court that petitioner was prejudiced by the state's long delay in bringing him to trial when the alibi witness died?

On March 21, 2007, the South Carolina Supreme Court issued an order denying the petition for writ of certiorari, and the remittitur was sent down on April 6, 2007.

## II. FACTS

The following facts were recited in the South Carolina Court of Appeals' opinion, State v. McGill, Op. No. 2002-UP 281 (S.C. Ct. App. 2002), quoted verbatim:

On February 28, 1996, between 11:00 p.m. and midnight, McGill approached the victim as she walked home from a local bar in Andrews. While at the bar, McGill had offered the victim money for the jukebox and tried to buy her a beer. When the victim left, McGill briefly followed her down the road before attacking her.

4

McGill dragged the victim into a wooded area, wrestled with her, and then threw her against a tree. The victim passed out.  After regaining consciousness she attempted to run away, but McGill caught her.  McGill took her to an abandoned house, where he repeatedly raped her and attempted to force her to perform oral sex.  McGill forced her to stay with him all day and night on February 29.  The victim escaped on the morning of March 1, 1996.

Dr. Bill Richmond performed a rape protocol exam when the victim arrived at the emergency room on the morning of March 1.  He testified the victim appeared lethargic, as if she had been through a traumatic event.  He observed a number of abrasions and multiple contusions.  The victim told Dr. Richmond her assailant was a black male and was a man she had seen before.

Dr. Richmond performed a vaginal swab and a Pap smear on the victim.  The results of both tests revealed the presence of sperm.  Testing revealed DNA from two individuals: the victim, and a profile consistent with that of McGill (a profile found in one in every 1,118,000,000 people).

An employee from the Rape Crisis Center joined the victim at the hospital.  The Rape Crisis worker accompanied the victim to the Andrews Police Department.  While in the hallway at the Police Department, the victim walked past McGill. The rape counselor testified the victim began to hyperventilate.  The victim saw McGill a second time at the Police Department and fell to the floor.

At trial, McGill testified he was drunk the night of the incident and did not remember having sex with the victim.  In the alternative, he testified if he did have sex with the victim, it was consensual.  McGill stated the victim sold her body in order to finance her drug habit.

(App. 712.)

### III. PETITIONER'S GROUND FOR RELIEF

In his petition for habeas, petitioner raises the following grounds for relief, quoted verbatim:

**Ground One:** Ineffective Assistance of Counsel.
**Supporting Facts:** Counsel was Ineffective for failing to investigate petitioner's alibi witness and for failing to argue to the court that petitioner was prejudiced by the State's long delay in bringing him to trial when the alibi witness (sic)

**Ground Two:**  Due Process of Law Violation.
**Supporting Facts**: Did the trial Judge err in denying McGill's motion to dismiss because his right to a speedy trial was violated.

5

**Ground Three:** Due Process of Law Violation.
**Supporting Facts:** Whether the trial Judge erred in refusing to quash a Jury seated in violation of Baston v. Kentucky.

**Ground Four:** Due Process of Law Violation.
**Supporting Facts:** Did the trial Judge err in allowing evidence of a prior bad act not the subject of a conviction.

(Pet. 6-11.)

## IV.  SUMMARY JUDGMENT

As stated above, on November 7, 2007, the respondent filed a return and memorandum of law in support of their motion for summary judgment and petitioner filed a response in opposition on November 20, 2007.

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases.  *See* Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972).  The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.   If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c).

The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on

6

the mere assertions contained in the pleadings.  Fed. R. Civ. P. 56(e);  Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial.  See Fed. R. Civ. P. 56(c).  Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact."  In Celotex, the Court held the defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the petitioner had failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof.  Celotex, 477 U.S. at 322-323.

## V. STANDARD OF REVIEW

In addition to the standard that the court must employ in considering motions for summary judgment, the court must also consider the petition under the requirements set forth in 28 U.S.C. § 2254. Under § 2254(d),

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the State court proceeding.

As "a determination of a factual issue made by a State court shall be presumed to be correct," a petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). With respect to reviewing the state court's application of federal law, " '[a] federal habeas court may grant the writ if the state court identifies the correct governing principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.'" Humphries v. Ozmint, 397 F.3d 206, 216 (4th Cir. 2005) (*quoting* Williams v. Taylor, 529 U.S. 362, 413 (2000)). Further, "an 'unreasonable application of federal law is different from an incorrect application of federal law,' because an incorrect application of federal law is not, in all instances, objectively unreasonable." *Id.* "Thus, to grant [a] habeas petition, [the court] must conclude that the state court's adjudication of his claims was not only incorrect, but that it was objectively unreasonable." McHone v. Polk, 392 F.3d 691, 719 (4th Cir. 2004).

## VI. DISCUSSION AS TO PROCEDURAL BAR

### A. Procedural Bar

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

### 1. Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254 , which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

8

(b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B) (I) there is either an absence of available State corrective process; or

(ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court. The United States Supreme Court has consistently enforced the exhaustion requirement.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal.   SCAR 207;  Blakeley v. Rabon, 221 S.E.2d 767 (S.C. 1976). The second avenue of relief is by filing an application for PCR.   S.C. Code Ann. § 17-27-10 et seq.

A PCR applicant is also required to state all of his grounds for relief in his application.  S.C. Code Ann. § 17-27-90.  Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts.  A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision.  S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977); Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983).

## 2. Procedural bypass

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, Smith v. Murray, 477 U.S. 527, 533 (1986).  Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file

10

a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote . . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case. Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state procedural bar, . . . the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both "cause" for noncompliance with the state rule and "actual prejudice" resulting from the alleged constitutional violation. Smith v. Murray, supra (quoting Wainwright v. Sykes, 433 U .S. at 84 (1977)); see also Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. Murray v. Carrier, 477 U.S. 478, 496 (1986).

### 3. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred

from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. Matthews v. Evatt, 105 F.3d 907 (4th Cir.1997)(*citing* Coleman v. Thompson, 501 U.S. 722, 735 n. 1 (1991); Teague v. Lane, 489 U.S. 288,297-98 (1989); and George v. Angelone, 100 F.3d 353,363 (4th Cir. 1996).

### 4. Cause and Actual Prejudice

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. Granberry v. Greer, 481 U.S. 129, 131 (1987). In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, Coleman v. Thompson, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. Murray v. Carrier, 477 U.S. 478 (1986). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* at 478.

Absent a showing of "cause," the court is not required to consider "actual prejudice." Turner v. Jabe, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. Murray v. Carrier, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. United States v. Frady, 456 U.S. 152 (1982).

In Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), the Fourth Circuit Court of Appeals stated that once a claim is determined to be procedurally barred, the court should not consider the

issue on its merits. The Court noted that it is always tempting to discuss the merits as an alternative reason for a conclusion, but that once a court finds an issue to be procedurally barred, all discussion which follows is only dicta. *See* Karsten v. Kaiser Foundation Health Plan, 36 F.3d 8, 11 (4th Cir. 1993). Therefore, once a court has determined that a claim is procedurally barred, it should not stray into other considerations.

## VII. MERITS

### A. Ground One

In Ground One, the petitioner alleges trial counsel was ineffective "for failing to investigate petitioner's alibi witness and for failing to argue to the court that petitioner was prejudiced by the State's long delay in bringing him to trial when the alibi witness" died during that delay. (Pet. 6.) The respondent contends this claim should be dismissed because the petitioner has not shown that trial counsel was deficient or that the petitioner was prejudiced. The undersigned agrees.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. The first prong of the test requires that petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." *Id.* at 688. The second prong requires the petitioner to show that the deficient performance prejudiced the defense. *Id.* at 687. In order to satisfy the prejudice requirement of the two-prong test set forth in Strickland, defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart v. Fretwell, 506 U.S. 364 (1993).

13

On October 31, 1996, trial counsel filed a motion with the trial court for a dismissal based upon the petitioner's constitutional right to a speedy trial.  He argued that the petitioner had been arrested in March 1996,  but had not been indicted.  In response, the State pointed out that part of the reason for delay was because the State was waiting for evidence to be analyzed by the State Law Enforcement Division ("SLED").  The trial court found the delay unusual, but denied the speedy trial motion and ordered the State to quickly finish the testing.  (App. 3-7.)  The petitioner was indicted in April 1997.

On March 12, 1998, trial counsel filed a second motion to dismiss based upon the petitioner's right to a speedy trial before the same trial court.  Trial counsel noted that when he made the first speedy trial motion, the State had not even taken samples from the petitioner for analysis.  The State responded that it would be ready to try the case in May 1998.  The State argued that SLED still needed to analyze one remaining set of samples.  The trial court noted that he was very concerned about the delay, but denied the motion.  He stated that the case had to be resolved one way or the other in May 1998.  (App. 12-18.)

When the case was called for trial on May 5, 1998, trial counsel moved a third time for a dismissal based on a speedy trial violation.  For the first time, trial counsel informed the trial court that an alibi witness, "Leo Rivers," had died during the delay.  The trial court asked trial counsel why he had not discussed the alibi witness at the hearing in March 1998, and why he had failed to notify the State of this alibi witness in discovery.   Trial counsel responded that Leo Rivers had died a year earlier -  before a discovery request was sent by the State. (App. 59-66.)

 Trial counsel also argued that he had received a copy of a letter from SLED dated March 19, 1998, stating SLED had only recently submitted evidence to a Dr. DeGuglielmo for testing.   The State responded that the evidence was sent to Dr. Duguglielmo in March because the type of DNA

14

analysis SLED was capable of performing, RFLP testing, was not working.  Therefore,  SLED sent the evidence to a private lab for a more sensitive type of DNA testing, PCR.  The trial court denied the petitioner's motion to dismiss.  He found that the two year delay in trying the petitioner to be troublesome, but noted that the motion had just been denied in March and the State was now ready to try the case.

At the PCR hearing, the petitioner claimed that trial counsel failed to investigate his alibi witness, Neil Rutledge.  (App. 789-90.)  Apparently, the witness was misidentified as Leo Rivers at the hearing on the speedy trial motion.  The petitioner claimed his alibi witness had died in the Georgetown jail.  (App. 793.) The petitioner stated he knew the witness by the nickname of "Rutledge" or "Rutley."  (App. 799-800, 817.)  Trial counsel stated he thought the alibi witness died sometime in 1997.  (App. 817.)   Trial counsel stated that the petitioner told him about the witness, but he did not know the witness's real name.  (*Id*.)  Trial counsel testified that he tried to determine the witness's real name, but the witness died before he could.  (*Id.*)  Trial counsel testified that he was never able to determine if the alibi was plausible because he was never able to talk to the witness.  (App. 817-18.)

The PCR Court found trial counsel's testimony  credible. Further, he found that the petitioner's claims as to his alibi witness were not credible, and that an alibi witness would not have helped the petitioner because he admitted having consensual sex with the victim.  (App. 830.)  The petitioner appealed the PCR Court's denial of PCR and in his <u>Johnson</u> petition the petitioner contended that trial counsel was ineffective for failing to investigate the alibi witness and argue in a timely manner that the death of the alibi witness resulted in prejudice which could have been used to support his motion for a dismissal.  The petitioner argued the PCR Court's ruling was erroneous

in stating the alibi witness could not have helped him because the alibi witness's testimony would have conflicted with the victim's testimony that the petitioner held her for approximately thirty hours over the course of three days.  The South Carolina Supreme Court dismissed the appeal.

Trial counsel testified that the petitioner did not know the real name of the alibi witness and by the time he had determined the witness's real name, the witness had died.  The PCR court found credible counsel's testimony.  There was no testimony at the PCR hearing that trial counsel delayed his investigation of this alibi witness, or that had counsel acted more swiftly or aggressively in finding this witness, the witness could have been discovered prior to his death.  Trial counsel was not deficient for failing to contact an alleged alibi witness whose real name the petitioner did not even know. *See* Collins v. Francis, 728 F.2d 1322 (11th Cir. 1984) (counsel was not ineffective for failing to investigate witnesses about whom defendant did not tell him); Primeaux v. Leapley, 502 N.W.2d 265, 268 (S.D. 1993) ("Where [defendant] did not give information to counsel, counsel could neither investigate it or pass it on to the expert.").

Further, the petitioner cannot show prejudice from trial counsel's alleged failure to timely argue the death of his alibi witness as a ground for the trial court to grant a dismissal based upon a speedy trial violation.  The petitioner has failed to show that he was actually prejudiced by the witness' death.  At the PCR hearing, the petitioner testified that Rutley was not the only witness who could have provided him an alibi.  He referred to him as "one of my alibis."  (App. 790.)  Furthermore, at trial, the petitioner testified that he and Rutley had gone to buy beer at Jack's Mini-Mart on Thursday night during the time period the victim had been held.  (App. 493.)  The petitioner testified that people saw him at the mini-mart and could tell the solicitor that he was there that Thursday night. (App. 507.)   The petitioner stated that he and Rutley then went to a building

16

behind Rutley's house where they proceeded to drink for an extended period.   The petitioner also mentioned Rutley's mother and sister (App. 500; 508).   Further, the petitioner testified that he went by his girlfriend Rachel's house on Thursday "and I couldn't be in two places at the same time." (App. 494; 507.)

Since the petitioner failed to show that any of these people could not be located, he has failed to show prejudice from the delay of his trial.   Thus, he cannot show prejudice from trial counsel's failure to either sufficiently investigate Rutley or argue Rutley's death in a timely fashion to the trial court as support for the speedy trial motion.

Additionally, other than his on self-serving statements, the petitioner has not presented any evidence that Rutley would have testified  favorably for him.   Generally, the failure to investigate and present a potential alibi witness supports a claim of ineffective assistance of counsel.   However, at the PCR hearing, the petitioner must present evidence establishing what the witness would have said at trial.   Bassette v. Thompson, 915 F.2d 932 (4th Cir.1990). The Fourth Circuit has held that "an allegation of inadequate investigation [of witnesses] does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced." Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir.1996). See also Sayre v. Anderson, 238 F.3d 631, 636 (5th Cir.2001) (explaining in a case arising under 28 U.S.C. § 2254 that "[w]here the only evidence of a missing witness's testimony is from the defendant, this Court views claims of ineffective assistance with great caution"). The petitioner fails to meet his burden of showing that Rutley would have testified at trial or that his testimony would have been helpful to him. See United States v. Pino, 708 F.2d 523, 528 (10th Cir.1983).  In a factually similar case, United States v. Vickers, 2007 WL 2986379 (S.D.Fla. 2007), a defendant alleged a seven-month delay in trying him violated his right to a speedy trial in

17

part because an alibi witness had died during the delay.  The court, in finding that the defendant had

not shown actual prejudice, stated:

> According to the Defendant, an alibi witness named Greg, died
> sometime after his indictment However, although the Defendant
> testified that an alibi witness died after his indictment in the instant
> case, the Defendant could not identify the person's last name, address
> or exact whereabouts. Additionally, the Defendant testified that he
> had not seen or spoken to Greg since his incarceration. The Defendant
> did not substantiate that this witness actually died. The Defendant did
> not substantiate that if alive, this witness would have testified on his
> behalf as the Defendant admitted he had not seen or spoken to the
> person while in prison. Importantly, the Defendant conceded that
> Greg would not testify differently from his multiple other alibi
> witnesses'. The Court finds the Defendant's allegations of prejudice
> resulting from the absence of this witness conclusory. It is long
> standing tradition in this Circuit, that conclusory allegations of
> impairment of defense are insufficient to constitute proof of actual
> prejudice. Therefore, Defendant's testimony falls far short from
> showing that he was actually prejudiced by the seven-month
> post-indictment delay in this case.

Likewise, here, the petitioner has not shown he was actually prejudiced by the delay.  Based

on the foregoing, the undersigned concludes that the state court's decision is not contrary to, nor an

unreasonable application of, federal law. Nor is it an unreasonable determination of the facts in light

of the State court proceeding.   Accordingly, this claim should be dismissed.

In his response to the respondent's motion for summary judgment, the petitioner also

contends that trial counsel was ineffective in failing to argue that the State prejudiced him by the

delay.  Specifically, he contends that the State's failure to have the evidence analyzed was not a

reason to delay the trial and if trial counsel had argued this, the petitioner would have received a

speedy trial. (Pet'r's Mem. Opp. Summ. J. Mot. at 10.)  This issue was not raised to or ruled on by

the PCR Court.  Further, the petitioner did not file a Rule 59(e), SCRCP,  motion with the PCR

Court seeking such a ruling.  Since the petitioner could have raised this allegation in his first PCR application, he cannot assert this ground for the first time in a federal habeas corpus petition. Matthews, 105 F.3d at 916-17; Murray v. Carrier, 477 U.S. 478 (1986).  Further, the petitioner has not presented or argued sufficient cause and actual prejudice to overcome the procedural default in his response to respondents' motion for summary judgment.  Accordingly, this specific claim is procedurally barred.

### B.  Ground Two

In Ground Two, the petitioner alleges that his due process rights were violated because the trial judge denied his motion to dismiss based upon a violation of his right to a speedy trial.  The petitioner raised this issue in his direct appeal to the South Carolina Court of Appeals and the court affirmed the denial of the motion.  He filed petitions for review with the South Carolina Supreme Court and the United States Supreme Court, but both Courts denied his petitions.

In Barker v. Wingo, 407 U.S. 514, 532 (1972), the United States Supreme Court set out the factors a court should consider in ruling on a speedy trial motion:  1) the length of the delay; 2) the reasons for the delay; 3) the defendant's assertion of his right to a speedy trial; 4) the prejudice caused to defendant as a result of the delay.  *Id.* at 530.  The South Carolina Court of Appeals considered each of these factors and concluded that the trial court had not erred in denying the petitioner's motion.

The Court of Appeals found that the State's reasons for the delay were "plausible, although somewhat troubling."  The court noted that the submission of evidence to the private lab in March 1998 was because SLED was unable to obtain results from its testing.  The court found the delay was not caused by wilful neglect or inaction.

19

Further, the Court of Appeals found the petitioner had not established prejudice from the delay. The court stated that it viewed the alibi witness with some skepticism given that trial counsel stated the alibi witness was named Leo Rivers in May 1998 but the petitioner in his PCR testimony claimed the witness was named Neil Rutley. (App. 714-16.) As discussed above, the petitioner has not shown any prejudice as he has failed to establish that Rutley would have provided him with an alibi and, furthermore, the petitioner testified that there were other witnesses who could also have provided him with an alibi. Based on the foregoing, the undersigned concludes that the state court decisions are not contrary to, nor an unreasonable application of, federal law. Nor is it an unreasonable determination of the facts in light of the State court proceeding. Accordingly, this claim should be dismissed.

### C. Ground Three

In Ground Three, the petitioner alleges that his due process rights were violated when the trial judge refused to quash the jury selected in violation of <u>Baston v. Kentucy</u>. In his response to the respondent's summary judgment motion, the petitioner states that he concedes this issue because of recent "caselaw that deflate this issue." (Pet'r's Mem. Opp. Summ. J. Mot. at 13.) Accordingly, it appears the petitioner has decided to abandon this issue and thus the undersigned will not address it.

### D. Ground Four

In Ground Four, the petitioner alleges his due process rights were violated when the trial court admitted evidence of a prior bad act which was not the subject of a conviction. The petitioner contends the trial court erred in admitting testimony regarding the petitioner's rape of another woman. The State offered the evidence to show a common scheme or plan pursuant to Rule 404(b),

20

SCRE.  On appeal, the petitioner raised the issue of whether trial court had erred in admitting the prior bad act evidence under Rule 404(b) and the Court of Appeals affirmed.  The Court of Appeals noted the same similarities found by the trial court and stated that the evidence showed "distinctive details describing McGill's modus operandi." (App. 720.)   The court also found the evidence responsive to an inevitable consent defense. (App. 719-20.)   The South Carolina Supreme Court denied the petitioner's petition for review.

The respondent contends this issue is procedurally barred. The undersigned agrees as the petitioner has not exhausted his state remedies as to this claim.  At trial, the petitioner did not argue that this claim violated his due process rights.  Further, on appeal, the petitioner also did not raise this issue as one violating his constitutional rights.  The petitioner first stated this claim in federal constitutional terms (i.e. a violation of his due process rights) in the instant federal habeas petition. In his state court pleadings, however, the petitioner stated this claim only in state law terms, presenting the alleged error as an evidentiary issue. This is insufficient to satisfy the exhaustion requirement. *See* Duncan v. Henry, 513 U.S. 364, (1995) ( "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court but in state court."); Anderson v. Harless, 459 U.S. 4 (1982) (holding that the presentation of all facts necessary to state a federal claim or presentation of similar state law claim is not sufficient to satisfy exhaustion requirement-federal constitutional claim must be explicitly raised in state proceedings).  Therefore, the undersigned finds that the petitioner has "failed to exhaust [a] constitutional claim in state court

21

because he failed to explicitly state, in federal terms, the constitutional basis for his claim such that the state court could review it." Hess v. McBride, 2008 WL 191250 *16 (N.D. W.Va. 2008)(unpublished)(*citing* Picard v. Connor, 404 U.S. 270, 275 (1971). Therefore, any attempt to now raise an argument that the admission of this evidence violated his constitutional rights is procedurally barred. Coleman v. Thompson, 501 U.S. 722 (1991) (issue not properly raised to the state's highest court, and procedurally impossible to raise there now, is procedurally barred from review in federal habeas).

The claim which the petitioner presented to the state courts is that the trial court erred in admitting prior bad acts. This is a question of state law and is not cognizable in these proceedings. "It is not the province of a federal habeas corpus court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Further, the petitioner has not presented or argued sufficient cause and actual prejudice to overcome the procedural default in his response to respondents' motion for summary judgment. Accordingly, this specific claim is procedurally barred and should be dismissed.

### VIII. CONCLUSION

Based on the foregoing, it is recommended that respondent's motion for summary judgment (document # 21) be GRANTED and petitioner's petition for Writ of Habeas Corpus should be denied, and the petition dismissed without an evidentiary hearing.

Respectfully submitted,


s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

April 3, 2008
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**